FILED
2006 Jul-18  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARTIN RUETER and TONI RUETER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.: 2:06-CV-868-VEH** |
| **v.** | ) | |
| | ) | |
| **MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Plaintiffs' Motion to Vacate an Arbitration Award (doc. 1), Defendant's Motion for Sanctions (doc. 2); and Plaintiffs' Motion for Reconsideration (doc. 11).

This action was filed in the Circuit Court of Jefferson County, Alabama, and Defendant removed to this court on the basis that complete diversity exists among the parties and the amount in controversy exceeds $75,000.[1] On June 29, 2006, the court

---

[1]Plaintiffs did not file a motion to remand, and the time to file such a motion has expired.

1

held a hearing on both motions.[2]  At the hearing, the court stated it would deny Plaintiffs' Motion to Vacate and Grant Defendant's Motion for Sanctions, with a written Order to follow.  The Plaintiffs then filed a Motion for Reconsideration (doc. 11), which Defendant opposed.  The court has fully considered all of the parties' pleadings.*

For the reasons stated herein, Plaintiffs' Motion to Vacate an Arbitration Award is due to be **DENIED**, Defendant's Motion for Sanctions is due to be **GRANTED**, and Plaintiffs' Motion for Reconsideration is due to be **DENIED**.

<u>**Factual and Procedural Background**</u>[3]

Plaintiffs became customers of Merrill Lynch in October 1995.  The stated investment objectives for the majority of Plaintiffs' Merrill Lynch accounts were growth and total return with moderate to aggressive risk.  Plaintiffs closed their Merrill Lynch accounts in May 2005.

---

[2]While counsel for Plaintiffs received notice, on June 6, 2006, that a hearing was to take place in this action, Plaintiffs' counsel did not attend and did not notify the court that he would be absent from the proceeding.  The court conducted the hearing despite the absence of Plaintiffs' counsel, noted counsel's absence on the record, and further noted that the court would rely <u>exclusively</u> on the parties' papers in reaching a ruling on the pending motions.

*The court has done so despite the failure of Plaintiffs' counsel to pay the required fee for admission pro hac vice.

[3]The facts and procedural history are not in dispute.  Plaintiffs only dispute the Panel's failure to award damages in this case.

Prior to closing their accounts, on or about April 1, 2004, Plaintiffs filed a Statement of Claim against Defendant with the New York Stock Exchange in accordance with the arbitration agreements entered into by Plaintiffs with Defendant. [Def. Answer; Exhibit A].  In the Statement of Claim, Plaintiffs alleged that their investments were unsuitable in light of their objectives.  They sought $400,000 in damages from Merrill Lynch.

Defendant filed an Answer to the Statement of Claim on June 9, 2004, which denied all liability and asserted a number of affirmative defenses. [Def. Answer; Exhibit B.]

Following a four-day evidentiary hearing, the Arbitration Panel (hereinafter "Panel") entered an Award on January 12, 2006, denying the relief requested in the Statement of Claim "in all respects." [Def. Answer; Exhibit C].  The Panel's Award did not set forth any findings of wrongdoing by Plaintiffs' financial advisor, Damian Bell[4].  The Award further specifically found that Plaintiffs achieved overall gains, in the amount of roughly $278,000, on their investments with Merrill Lynch, and that they therefore incurred no damages.

On or about April 11, 2006, Plaintiffs filed a Motion to Vacate the Arbitration Award pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "FAA"), with

---

[4]Damian Bell is not a party to this action.

the Circuit Court of Jefferson County, Alabama.  Defendant removed this action to this Court by filing a Notice of Removal on May 4, 2006.

In the Motion to Vacate, Plaintiffs contend that the Award is due to be vacated because, according to Plaintiffs, the Panel refused to consider expert testimony regarding "prudently managed account" damages.  Plaintiffs argue that (1) the award is in "manifest disregard of the law;" (2) the award "is not founded on a clear, rational basis and, thus, is arbitrary and capricious;" and (3) the arbitrators are "guilty of misconduct" because the Panel "admitted expert evidence offered by the [Plaintiffs] but then refused to consider it."

## Discussion

### I.    Plaintiff's Motion to Vacate an Arbitration Award

There are two central themes behind Plaintiffs' arguments that, once defeated, cause this motion to fail.  First, Plaintiffs contend that Alabama law[5] provides for damages in "gains" cases under the "prudently managed account" theory.  Second, Plaintiffs maintain that the Panel found liability on the part of Plaintiffs' account manager, Damian Bell, or on the part of Defendant, Merrill Lynch.

**A.    The Alabama Supreme Court case on which Plaintiffs rely is distinguishable from the instant action; thus, Plaintiffs' argument that Alabama law provides for damages in "gains" cases under the**

---

[5]All parties have relied on Alabama law in their arguments.

4

**"prudently managed account" theory is untenable.**

Plaintiffs cite to the case of *First Alabama Bank of Huntsville v. Spragins*, 515 So.2d 962 (Ala. 1987), and state that, pursuant to that decision, the Panel had a duty to award "prudently managed account" theory damages in this case.  In *Spragins*, the Alabama Supreme Court concluded that a circuit court was not in error in finding that a trust suffered a compensable loss, despite overall gains in the account, and that the method of calculating damages employed by the plaintiff's expert "was not mere speculation or hindsight." *Id*. at 965.   However, the facts presented in the *Spragins* case are materially different from the facts of the instant action.  The account at issue in *Spragins* was a trust account, and the Court devoted a large portion of the opinion to discussing the fiduciary duty imposed on a trustee to diversify trust assets.  In addition, the trust account was a discretionary account whereas the investment accounts that are the subject of this litigation were nondiscretionary accounts.

More important than the factual differences between *Spragins* and the action currently before this court is that *Spragins* does not hold or imply that an arbitration panel has a duty to give consideration to the "prudently managed account" theory and likewise to award damages based on that consideration.  Plaintiffs' reliance on the limited holding in *Spragins* is misplaced.

It is worthy of note that there exists a wealth of authority to support the Panel's determination that an award of damages would be improper as a result of the Plaintiffs' realization of a substantial gain from their investments with Mr. Bell. The Defendant cites persuasive decisions in which courts have held that the "prudently managed account" theory is too speculative and is unacceptable as a matter of law; rather, the courts in those cases stated that a more appropriate measure of damages should be calculated based on the actual net out-of-pocket losses proximately caused by the alleged misconduct. *See Madigan, Inc. v. Goodman*, 498 F.2d 233, 239 (7th Cir. 1974); *Fey v. Walston & Co.*, 493 F.2d 1036 (7th Cir. 1974). Out-of-pocket damages are limited to "the excess of what [a plaintiff] paid over the value of what [a plaintiff] got ..." *Stone v. Kirk*, 8 F.3d 1079, 1093 (6th Cir. 1993) (quoting *Levine v. Seilon, Inc.*, 439 F.2d 328, 334 (2nd Cir. 1971). *See also Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 303 F.2d 527 (10th Cir. 1962) (stating that the rule of damages in cases involving defrauded investors is the out-of-pocket rule).

In connection with the arbitration, Plaintiffs submitted a brief and offered expert testimony and charts based on what they calculated their accounts would have gained had they been "properly" managed. However, as the Panel found, this lost profits approach to awarding damages is fatally flawed and contrary to well-accepted

law. Courts, including the Eleventh Circuit, have held that such a theory is inherently speculative and therefore inappropriate. *See Messer v. E.F. Hutton & Co.*, 833 F.2d 909 (11th Cir. 1987) (court upheld J.N.O.V. on damage award holding that investor had failed to prove lost profits because he had not shown the "existence of a programmed investment plan which incorporates a predetermined response to market conditions . . . which the investor would in fact follow"); *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54 (2d Cir. 1984) (court rejected the benefit of bargain theory as too speculative); *Resolution Trust Co. v. Stroock, Stroock & Lavan*, 853 F. Supp. 1422 (S.D. Fla. 1994) (court denied claim for lost profits because comparison with standard index was, as a matter of law, too speculative).

In *Stevens v. Abbott, Proctor & Paine*, 288 F. Supp. 836 (E.D. Va. 1968), the district court for the Eastern District of Virginia provided the following explanation for rejecting the well-managed portfolio theory:

> [T]he loss of bargain recovery is an attempt to award the plaintiff the profits that a properly managed account may have yielded. This, however, requires the Court, to a great extent, to engage in speculation and conjecture. … The fallacy in this approach … is that it requires the Court to ignore the fact that even "properly managed accounts" are subject to losses, and, second, it imposes upon a defendant stock broker a presumption that being an expert he is endowed with unparagoned powers of prediction, and this the Court is not willing to do. Indeed, to so do would require the Court to blind itself to the financial facts of life and would, in the Court's opinion, amount to the awarding of punitive damages under the guise of compensatory damages. It seems to the

Court to be more equitable and *justice requires that the amount awarded be based, insofar as possible, upon the unemotional mathematical evidence elicited throughout the trial as to what actually took place in this plaintiff's account.*

*Id.* at 849 (emphasis added).  The court concludes that the Panel's Award is premised upon a correct application of the law of damages.

**B.    The Panel denied all of Plaintiffs' claims and did not find any liability on the part of Mr. Bell or on the part of the Defendant to this action.[6]**

Plaintiffs' motion focuses on Paragraph 4 of the Award, in which the Panel

---

[6]Absent a finding of liability on the part of Mr. Bell, Plaintiffs cannot recover damages from Merrill Lynch under a failure to supervise theory.  In order to recover on a failure to supervise claim against a broker-dealer, a claimant must prove each and every one of the following four elements: (1) an underlying violation of the federal securities laws by the registered representative, (2) association of the registered representative or other person who committed the violation, (3) supervisory jurisdiction over that person, and (4) failure to reasonably supervise the person committing the violation.  *See Philadelphia Investors, LTD.*, Initial Decision, 66 SEC Docket 1992 at *11 (Mar. 20, 1998), Final, 68 SEC Docket 572 (Oct. 6, 1998); *see also In the Matter of Dean Witter Reynolds, Inc.*, Initial Decision, 74 SEC Docket 522 at *38 (Jan. 22, 2001).  Moreover, a claimant cannot recover from a broker-dealer absent a finding that the claimant suffered damages.

Similarly, Alabama law provides that an employer cannot be held liable for failure to supervise absent a finding of tortious conduct on the part of the employee.  *See Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 824-25 (Ala. 2000) ("[T]he only means of attaching liability to Pemco would be to prove wrongful conduct by Windsor as its agent…. Accordingly, a verdict against Pemco based on a finding of negligent training and supervision would be inconsistent with a verdict exonerating Windsor.").

Absent a finding that the financial advisor – in this case Mr. Bell – committed wrongdoing, a claimant cannot recover on a failure to supervise claim.  In this case, the Panel noted its dissatisfaction with the supervision over the Fairhope, Alabama office.  The Panel further noted that "[o]versight conditions were ripe for mischief, *had Mr. Bell been so inclined.*" (Emphasis added).  There is no finding in the Award that Mr. Bell committed any underlying wrongdoing.  Indeed, the language of the Award suggests that the Panel found that Mr. Bell was not "so inclined" to commit violations.  Thus, even if Plaintiffs had suffered losses in their accounts, a dismissal of their claims still would have been appropriate.

expressed concern regarding the level of supervision within the branch office where Mr. Bell was employed. However, the Panel did not find any misconduct with respect to Mr. Bell's servicing of Plaintiffs' accounts. In fact, the Panel specifically stated that "[o]versight conditions were ripe for great mischief, had Mr. Bell been so inclined." There is no finding in the Award that Mr. Bell was "so inclined." The language of the Award suggests that the Panel did not believe that Mr. Bell was "inclined" to commit any violations, and that they found he did not commit any wrongdoing in connection with the servicing of Plaintiffs' accounts. A reliance by the Plaintiffs on Paragraph 4 for the proposition that the Panel found liability is contrary to the plain meaning of the language of the Award. The Panel made no conclusory statements as to Defendant's liability. The mere fact that the Panel did not endorse all of the Defendant's actions does not equate to a determination of liability for any of those actions.

## C.  The Award was not made in manifest disregard of the law.

Plaintiffs' assertion is that, because the arbitration panel found wrongdoing on the part of Defendant but failed to award damages in accordance with Alabama law, the failure to award damages constitutes a manifest disregard for the law. As discussed *supra*, Plaintiffs exercise mistaken reliance on *Spragins* for the proposition that, under Alabama law, the arbitration panel had a duty to award damages based on

9

Plaintiffs' expert testimony as to the performance of a "prudently managed account" as well as on the belief that the Panel found wrongdoing on the part of the Defendant. *See* 515 So.2d 962 (Ala. 1987).

However, even accepting *arguendo* Plaintiffs' assertion that the Panel found wrongdoing on the part of the Defendant sufficient to entitle Plaintiffs to an award of damages, the Plaintiffs have failed to meet the narrowly tailored criteria necessary for this court to vacate the Award.

Manifest disregard of the law "requires clear evidence that the arbitrator was conscious of the law and deliberately ignored it." *B.L. Harbert International, LLC v. Hercules Steel Company*, 441 F.3d 905, 910 (11th Cir. 2006) (quoting *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1461 (11th Cir. 1997)) (internal marks omitted). "A showing that the arbitrator merely misinterpreted, misstated, or misapplied the law is insufficient." *Id.*

The *Montes* case "adopted manifest disregard for the law as a basis for challenging an arbitration award," and the case remains the sole instance in which the 11th Circuit has "ever found the exceptional circumstances that satisfy the exacting requirements" justifying the vacation of an award due to manifest disregard for the law. *Id.*

In *Harbert*, the 11th Circuit carved out a set of four conjunctively joined factors

which are specific to *Montes* and that must be present before a court should consider

whether to vacate an arbitration award.  *See* 411 F.3d at 911.  In order for a plaintiff

to mount a successful challenge to an award under the theory of manifest disregard

for the law, a plaintiff must demonstrate that:

> 1) the party who obtained the favorable award had conceded to the arbitration panel that its position was not supported by the law, which required a different result, and had urged the panel not to follow the law; 2) that blatant appeal to disregard the law was explicitly noted in the arbitration panel's award; 3) neither in the award itself nor anywhere else in the record is there any indication that the panel disapproved or rejected the suggestion that it rule contrary to law; and 4) the evidence to support the award is at best marginal.

*Id*. (emphasis added).

The instant case does not present this court with the rare circumstances of

*Montes*; therefore, the court must conclude that the Panel's decision was not made

with manifest disregard for the law.  The Panel's decision does not explicitly note,

nor does it imply, that the Defendant made a "blatant appeal to disregard the law" nor

is there any evidence before this court that the Defendant conceded its position was

not supported by the law, that Defendant sought a different result than the law

demanded, or that the Defendant "urged" the Panel to deviate from the law. *Id*.

Because Plaintiffs have failed to demonstrate that the first and second prongs of the

*Harbert* test have been met, the court will not venture into an analysis of Plaintiffs'

11

claims in light of the 11th Circuit's holding in *Montes*.  In addition, having concluded that the first two of the four necessary elements of *Harbert* are not present in the instant action, the court need not reach a determination as to whether the third and fourth elements of the *Harbert* test have been satisfied.  As such, Plaintiffs' argument that the Panel's decision was made in manifest disregard for the law is without merit.

**D.    The Panel's award is not arbitrary and capricious.**

Plaintiffs argue that the Panel's failure to award damages in this case is arbitrary and capricious; specifically, Plaintiffs state, "Given that Alabama law endorses prudently managed account theory damages, the Award is not founded on a clear, rational basis and, thus, is arbitrary and capricious." [Pl. Mot. To Vacate; p.9].

The 11th Circuit reviews a district court's denial of a Motion to Vacate an Arbitration Award for abuse of discretion.  *See Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 780 (11th Cir. 1993).  If, as in the instant case, an award is not silent as to its rationale, then it is an abuse of discretion for a district court to discern whether the award has a proper basis; rather, the court is bound to proceed directly to a determination as to whether the award is arbitrary and capricious.  *See Id.*

"An arbitration award will not be held to be arbitrary and capricious unless a ground for the arbitrator's decision cannot be inferred from the facts of the case." *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1017-1018 (11th Cir. 1998)

(internal marks and citations omitted).  "For an award to be vacated as arbitrary and capricious, the Panel's award must contain more than an error of law or interpretation. Rather, there must be no ground for the Panel's decision."  *Brown*, 994 F.2d at 781 (internal citations omitted).  A court may vacate an award as being arbitrary and capricious in only two instances: (1) when the award "exhibits a wholesale departure from the law;" or (2) when the award "is not grounded in the contract which provides for the arbitration."  *Id*.  Plaintiffs argue that only the first instance is applicable to the this action.

A party contesting an arbitration award faces a "difficult standard" to overcome as an arbitration award "is presumptively correct."  *Lifecare Intern., Inc. v. CD Medical, Inc.*, 68 F.3d 429, 435 (11th Cir. 1995).  The court must employ a rational basis test in making its determinations.  *See Brown*, 994 F.2d 779.

Plaintiffs argue that the facts and the 11th Circuit's holding in *Ainsworth v. Skurnick*, 960 F.2d 939 (11th Cir. 1992), are similar enough to the instant action such that this court should rely on *Ainsworth* as controlling and should vacate the Award due to its arbitrary and capricious nature.  The facts of *Ainsworth* are easily distinguishable from the facts of this Plaintiffs' litigation; thus, its limited holding is inapplicable to the instant action.  The court in *Ainsworth* was confronted with a situation in which an arbitration panel twice refused to award damages to a plaintiff

despite issuing a finding that the broker had been negligent and contrary to instructions directed to the arbitration panel from a United States District Court that damages were mandatory under the law.  In noting that there "was no rational basis upon which the panel may have acted," the 11th Circuit vacated the award stating that "[t]here is simply no explanation in the award itself why damages were not awarded." *Ainsworth*, 960 F.3d at 940.

In contrast, this court is met with a case in which the Panel did not hold the Defendant liable for any of Plaintiffs' claims.  The thrust of Plaintiffs' argument is premised on the mistaken assumption that the Panel, in the instant case, issued a finding that Mr. Bell and the Defendant to this action were culpable for certain wrongdoing.  Quite to the contrary, there is nothing in the Award that attributes any liability to any Defendant appearing before the Panel.

Absent this mistaken interpretation of the Award, Plaintiffs have failed to demonstrate that there is "no ground" for the Panel's decision not to award damages. In refusing to award Plaintiffs damages,

> The panel found no basis for assessing damages in this matter since Claimants' accounts enjoyed a profit of over $278,000 during the time they were managed by Respondent's employee Damian Bell.  Claimants urged the Panel to measure damages from the peak value their accounts achieved in March, 2000, until Mrs. Rueter ordered Mr. Bell to liquidate all equity positions in 2001, arguing that their accounts were improperly structured to defray market risk.  However, it was that "improper

14

structure" which produced the peak value.  Had the fixed income/equity structure Claimants advocated as appropriate been in place and maintained after Mr. Rueter deposited his large check in December, 1998, the peak value reached in March, 2000, may have been much lower with concomitantly lower profit.  Assessing how any restructuring might have played out would require a great deal of speculation which the Panel has no reasonable basis for, and therefore is unwilling to engage in.

In light of the Panel's decision, Plaintiffs seek to have this court determine that Alabama law provides for damages in "gains" cases based on the "prudently managed account" theory.  It is Plaintiffs' contention that, should the court agree that their interpretation of Alabama law is correct, the award should be vacated as being arbitrary and capricious.  The court need not reach the merits of Plaintiffs' argument as "there must be *no ground* for the Panel's decision." *Brown*, 994 F.2d at 781 (internal citations omitted) (emphasis added).

The Panel clearly articulated two separate rationales for denying Plaintiffs' prayer for damages.  First, the Panel stated that it would not award Plaintiffs damages because they enjoyed a sizable profit as a result of their investments with the Defendants.  It is this first rationale which Plaintiffs now seek to have this court find arbitrary and capricious.  Second, the Panel noted that any assessment of damages in this case would "require a great deal of speculation which the Panel has no reasonable basis for."  Because the Panel articulated a separate basis beyond that of which the

Plaintiffs complain, the court again must find that the Award was not arbitrary and capricious. *See id.* Plaintiffs have failed under their burden to overcome the presumption of validity afforded to arbitration awards.

### E.    The Arbitration Award is not due to be vacated under 9 U.S.C. § 10(a)(3).

Plaintiffs argue that the award is due to be vacated because the arbitrators engaged in misconduct by refusing to consider Plaintiffs' expert testimony on damages. The FAA permits a court to vacate an arbitration award where "the arbitrators refused to hear pertinent information." *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998).

It is undisputed that the Plaintiffs' expert was permitted to file a brief with the Panel prior to the hearing, to testify at the hearing, and to supplement his testimony with documentary evidence. Plaintiffs' argument is essentially that, because the Panel did not award damages, the Panel must have failed to consider the Plaintiffs' expert's testimony as to damages. There is no case cited to by the parties, and the court is unaware of any authority, holding that a Panel's refusal to adopt a party's expert's testimony is tantamount to a refusal to hear such testimony. On the contrary, "a mere difference of opinion between the arbitrators and the moving party ... will not support vacatur under section 10(a)(3)." *Id*. (citing *Robbins v. Day*, 954 F.2d 679,

685 (11th Cir. 1992)).  "An arbitrator need not consider all the evidence the parties

seek to introduce but may reject evidence that is cumulative or irrelevant."  *Id*. at

1017.  An arbitrator "need only give each party the opportunity to present its

arguments and evidence."  *Robbins*, 954 F.2d at 685.

The undisputed facts of this case are that Plaintiffs were given an opportunity

to present expert evidence to the Panel.  Plaintiffs' argument that they were denied

such an opportunity is simply inconsistent with the facts of this case.  Accordingly,

there was no arbitration misconduct.

**II.   An award of sanctions against the Plaintiffs is proper in this case based on the 11th Circuit's holding in *B.L. Harbert International, LLC v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006).**

In the *Harbert* decision, 441 F.3d 905, the Eleventh Circuit encouraged courts

to award sanctions when faced with such frivolous motions to vacate:

> Courts cannot prevent parties from trying to convert arbitration losses
> into court victories, but it may be that we can and should insist that if a
> party on the short end of an arbitration award attacks that award in court
> without any real legal basis for doing so, that party should pay sanctions.
> A realistic threat of sanctions may discourage baseless litigation over
> arbitration awards and help fulfill the purposes of the pro-arbitration
> policy contained in the FAA.  It is an idea worth considering.
>
> We have considered ordering Harbert and its counsel to show cause why
> sanctions should not be imposed in this case, but have decided against
> doing so.  That decision is the product of the combined force of three
> reasons.  First, there is speculative dicta in the University Commons
> opinion that provided Harbert with a little cover for its actions, although

17

this factor alone does not carry much weight…. Second, Hercules did not move for sanctions against Harbert in either the district court or this Court….

Third, and most importantly, when Harbert took its arbitration loss into the district court and then pursued this appeal, it did not have the benefit of the notice and warning this opinion provides. The notice it provides, hopefully to even the least astute reader, is that this Court is exasperated by those who attempt to salvage arbitration losses through litigation that has no sound basis in the law applicable to arbitration awards. The warning this opinion provides is that in order to further the purposes of the FAA and protect arbitration as a remedy we are ready, willing, and able to consider imposing sanctions in appropriate cases. While Harbert and its counsel did not have the benefit of this notice and warning, those who pursue similar litigation positions in the future will.

441 F.3d at 914. The facts of the case at bar present the court with precisely the type of action admonished by the 11th Circuit in *Harbert*; however, unlike the plaintiff in *Harbert*, the Plaintiffs here had both notice and warning of the possibility of sanctions.

While *Harbert* delineates that sanctions are appropriate in cases such as this, the decision, unfortunately, does not point to a standard, statute, or rule pursuant to which a court might craft an appropriate sanction. Therefore, this court will analyze the propriety and scope of sanctions in the instant case according to well established law for another avenue to sanctions imposed as a result of frivolous litigation; specifically, the court will examine the facts of this case under precedent set forth for sanctions awarded pursuant to Rule 11 of the Federal Rules of civil Procedure (Rule

18

11).

An appellate court reviews all aspects of a district court's Rule 11 determination for an abuse of discretion. *Jones v. International Riding Helmets, Ltd.,* 49 F.3d 692, 694 (11th Cir.1995) (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)).

Rule 11(b) imposes a duty upon attorneys and parties to refrain from filing or pursuing frivolous claims. *See* Fed.R.Civ.P. 11(b). Rule 11 sanctions are proper: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *See Worldwide Primates, Inc. v. McGreal,* 87 F.3d 1252, 1254 (11th Cir.1996). Rule 11(c) allows a court to "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation," which may include "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id*.

The objective standard for testing conduct under Rule 11 is "reasonableness under the circumstances" and "what was reasonable to believe at the time" the pleading was submitted. *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir.1998). A

court must follow a two part test: (1) whether the party's claims are objectively frivolous; <u>and</u> (2) whether the person who signed the pleadings should have been aware that they were frivolous. *Id.*

Although sanctions are warranted when the claimant exhibits a "deliberate indifference to obvious facts," they are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law. *Baker,* 158 F.3d at 524. The purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression. *Id.*

Rule 11 emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable. *Ruszala v. Walt Disney World Co.*, 132 F.Supp.2d 1347, 1352 (M.D. Fla. 2000). "A litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *Ruszala*, 132 F.Supp.2d at 1352 (quoting Fed.R.Civ.P. 11, advisory committee's notes) (internal marks omitted). "Rule 11 stresses the need for some prefiling inquiry." *Worldwide Primates, Inc.,* 87 F.3d at 1254 (quoting *Mike Ousley Productions, Inc. v. WJBF-TV,* 952 F.2d 380, 382 (11th

Cir.1992)).[7]

In the instant case, Plaintiffs' Motion to Vacate is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law. *See Worldwide Primates, Inc.,* 87 F.3d at 1254. The court concludes that Plaintiffs' Motion to Vacate is both frivolous and has no real legal basis. *See Baker,* 158 F.3d at 524. Plaintiffs' motion has needlessly increased the cost of litigation. In addition, there is no authority or contention relied upon by

---

[7]Rule 11 mandates procedural requirements that, if ignored, prove fatal to a movant under the rule.

> Rule 11(c)(1)(A) calls for a motion for sanctions to be made separately from other motions. Further, it may not be presented to [the] Court for twenty-one (21) days after the service of the motion for sanctions to the opposing party, in order to provide the party filing the motions to dismiss time to withdraw its challenged paper. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

*Rondolino v. Provident Life and Acc. Ins. Co.*, 1994 WL 143066, *2 (M.D. Fla. 1994) (citing Fed. R. Civ. P. 11). The 11th Circuit indicated that an imposition of sanctions, pursuant to the authority of *Harbert*, could be shouldered upon a party by the court *sua sponte*. Accordingly, this court finds that the procedural requirements set forth in Rule 11 are inapplicable to a motion for sanctions under *Harbert*. The Defendant's failure, in this case, to move for sanctions in accordance with the procedural requirements of Rule 11 is not detrimental to a motion for sanctions filed in light of the holding in *Harbert*. The Defendant indicated, in its Answer, that it would seek sanctions. The court finds that Defendant's Answer was sufficient to put Plaintiffs on notice although, under *Harbert,* no notice was required to be given.

the Plaintiffs that provides even the slightest "cover" for their legal positions asserted in this litigation.[8]   Upon analyzing Defendant's Motion for Sanctions in light of *Harbert* and under the law applicable to sanctions awarded under Rule 11, sanctions are due to be imposed in this case.

The explicit and unveiled threat of sanctions articulated in *Harbert* did not deter the Plaintiffs in this instance; therefore, this court will craft and impose a sanction in keeping with the goals of compensating the Defendant for its expenses incurred as a result of having to defend against this litigation and protecting arbitration as a cost effective alternative form of dispute resolution.

The Defendant has presented evidence to the court that its actual costs incurred as a result of having to defend against this action are $15,037.60.  This court does not infer from *Harbert* that an appropriate sanction in cases of this sort should be limited to the actual costs shouldered upon a defendant.  Baseless litigation of this kind not only burdens a defending party, it needlessly drains valuable judicial resources and violates the purpose of the FAA.  However, any award of sanctions must be reasonably related to Plaintiffs' malfeasance.  Clearly the fees and costs incurred by Defendant are so related.  Further, the Court has reviewed Defendant's itemized

---

[8]Any such "cover" would appropriately "not carry much weight."  *Harbert*, 444 F.3d at 914.

statement and finds the fees and costs both reasonable and necessary.  Therefore, the

court awards to Defendant the sum of $15,037.60 as sanctions.

## III.   Plaintiffs' Motion for Reconsideration

A district court has plenary power over an interlocutory order and the power

to reconsider, revise, alter or amend it.  *Toole v. Baxter Healthcare Corp*., 235 F.3d

1307, 1315 (11th Cir. 2000) (citations and internal quotations omitted).

In the interests of finality and conservation of scarce judicial resources,

reconsideration of an order is an extraordinary remedy and is employed sparingly.

*See United States v. Bailey*, 288 F.Supp.2d 1261, 1267 (M.D. Fla. 2003);

*Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992);

*Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should

not use motions to reconsider as a knee-jerk reaction to an adverse ruling").  Indeed,

as a general rule, "[a] motion to reconsider is only available when a party presents the

court with evidence of an intervening change in controlling law, the availability of

new evidence, or the need to correct clear error or manifest injustice."  *Summit

Medical Center of Alabama, Inc. v. Riley*, 284 F.Supp.2d 1350, 1355 (M.D.Ala.

2003).  It is well established in this circuit that "[a]dditional facts and arguments that

should have been raised in the first instance are not appropriate grounds for a motion

for reconsideration." *Rossi v. Troy State University*, 330 F.Supp.2d 1240, 1249 (M.D.

Ala. 2002) (denying motion to reconsider where plaintiff failed to submit evidence in question prior to entry of order and failed to show good cause why he could not have done so).[9]  Furthermore, the Eleventh Circuit has declared that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F.Supp.2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider where movant advanced several new arguments); *Coppage v. U.S. Postal Service*, 129 F.Supp2d 1378, 1379-81 (M.D. Ga. 2001) (similar).[10]  *See also Richards v. United States*, 67 F.Supp.2d 1321, 1322 (M.D.Ala. 1999) (same).

Notwithstanding these limitations, reconsideration is appropriate to correct manifest errors of law or fact.  *See* Fed.R.Civ.P.60(b); *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence."); *Summit Medical Center of Alabama, Inc. v.*

---

[9]  Likewise, motions to reconsider are not a platform to relitigate arguments previously considered and rejected.  *See Lazo v. Washington Mutual Bank*, 2001 WL 577029, *1 (9th Cir. May 29, 2001) (motion to reconsider is properly denied where movant merely reiterates meritless arguments); *American Marietta Corp. v. Essroc Cement Corp.*, 2003 WL 463493, *3 (6th Cir. Feb. 19, 2003) (similar).

[10]  This discussion is lifted almost verbatim from Judge Steele's opinion in *Gougler v. Sirius Products, Inc*., 370 F.Supp.2d 1185, 1189 (S.D. Ala. 2005).

*Riley*, 284 F.Supp.2d 1350, 1355 (M.D. Ala. 2003) ("A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.").  The grant or denial of a motion to reconsider is left to the discretion of the district court.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000).

In their Motion for Reconsideration, Plaintiffs continue to maintain that the *Spragins* decision, discussed *supra*, embraced the "prudently managed account" theory and that the holding is not limited to awards of damages associated with trust accounts.  Also, Plaintiffs restate their argument that the Panel improperly disregarded the Plaintiffs' expert's testimony as to "prudently managed account" damages.  The repetition of an argument which has been previously raised and found to be baseless does not meet the standard employed on review of a Motion for Reconsideration.  Plaintiffs fail to offer "evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Summit Medical Center of Alabama*, 284 F.Supp.2d at 1355.  As such, Plaintiffs' Motion to Reconsider the court's Order denying the Motion to Vacate is due to be **DENIED**.

In addition, Plaintiffs contend that sanctions are inappropriate in that the

Motion to Vacate is not frivolous, was not brought in manifest disregard for the law, and that sanctions are improperly awarded where a Plaintiff has not been afforded reasonable notice and an opportunity to be heard.  These arguments are discussed in Sections I & II of this Memorandum Opinion and are found wanting.  Nonetheless, the court has considered each of Plaintiffs' arguments in light of the appropriate standard on a Motion for Reconsideration.

Plaintiffs merely restate their arguments with regard to the Motion to Vacate's frivolous nature and its having been brought in manifest disregard of the law.  These contentions are discussed in Section I of this Memorandum Opinion and will not be revisited here as Plaintiffs fail to offer "evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice."  *Summit Medical Center of Alabama*, 284 F.Supp.2d at 1355.

Plaintiffs' assertions that they were not provided with notice or an opportunity to be heard on Defendant's Motion for Sanctions are contrary to the record of pleadings filed in this case.  As an initial matter, the court has stated that there is no notice requirement for sanctions to be awarded pursuant to *Harbert* and that the court's Order denying Plaintiffs' Motion to Vacate and granting Defendant's Motion for Sanctions was based entirely upon the pleadings.

Plaintiffs incorrectly state that Defendant did not move for sanctions, pursuant

to *Harbert*, in its Answer and that the court granted Defendant's "oral motion" for sanctions during the June 29, 2006, hearing before the undersigned. [Pla. Mot. for Reconsideration; p. 6-7].   In its Answer, Defendant clearly moved for an award of sanctions in this case based upon the holding in *Harbert*, and the court verbally granted Defendant's written motion at the June 29, 2006, hearing and stated that a written opinion would follow. [Def. Answer; p. 17-18].   Plaintiffs did not respond to Defendant's Answer.   Plaintiffs had both notice and an opportunity to be heard on Defendant's Motion for Sanctions; however, as stated previously, neither notice nor an opportunity to respond to a *Harbert* motion for sanctions is required.   As such, Plaintiffs' Motion for Reconsideration of the imposition of sanctions is due to be **DENIED**.

## Conclusion

A written Order will be entered consistent with this Memorandum Opinion.

**DONE** this 18th day of July, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

27